UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
LONG SIDE VENTURES, LLC et al.,

       Plaintiffs,

 -v-                                                 No.  12CV6836-LTS-MHD

ADARNA ENERGY CORPORATION
f/k/a ECOSYSTEM CORPORATION,
et al.,

       Defendants.
--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiffs Long Side Ventures, LLC ("LSV") and Sunny Isles Ventures, LLC ("SIV" and, together with LSV, "Plaintiffs") bring eight breach of contract claims against Defendants Adarna Energy Corporation f/k/a Ecosystem Corporation ("Ecosystem"), GreenShift Corporation ("GreenShift") and Minority Interest Fund (II), LLC ("MIF" and, collectively, "Defendants") arising out of Defendants' alleged failure to pay principal and interest due and owing under six convertible debentures[1] (the "Debentures") and failure to provide debentures owed under a debt purchase agreement (the "Debt Purchase Agreement") and assignment agreement (the "Assignment Agreement").  This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332.  Currently pending before the Court is Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 56, seeking summary judgment on the eight breach of contract counts asserted in the Complaint, and an award of aggregate damages of $766,127.79, plus contractual

---

[1] Debentures are securities which permit the holder to collect either the outstanding principal with interest, like a bond, or, if they are convertible Debentures like the ones here, to convert the outstanding debt into stock of the issuing company.  (See Compl. ¶ 2.) .

interest and pre- and post-judgment interest and costs.  For the following reasons, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND[2]

The following material facts are undisputed, except as otherwise indicated.  Over a period of several years, Plaintiffs purchased six convertible Debentures issued by GreenShift and EcoSystem.  (Pl. 56.1 St. ¶ 15.)  Pursuant to the Debentures' terms, Plaintiffs were entitled to recover the principal amount of each Debenture, along with interest at a contractually specified rate, at each Debenture's maturity date.  Alternatively, Plaintiffs could convert the outstanding debt, "in whole or in part at any time and from time to time," subject to certain restrictions, into common stock of the issuing corporation.  (Id. ¶ 16.)  The Plaintiffs converted to company stock, or were paid, a portion of the principal value of each of the Debentures, and assert that each has passed its maturity date with a principal balance and contractual interest outstanding. (Id. ¶¶ 17-19.)  Plaintiffs' First through Sixth Claims for Relief allege that Defendant Ecosystem owes a total of $62,317 plus contractual interest to LSV and that GreenShift owes a total of $145,095.85 plus contractual interest to SIV and a total of $50,406.64 plus contractual interest to LSV.  (Id.)[3]

---

[2]   Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

[3]   As to the first Debenture (ESYM-MIF001, with a maturity date of December 31, 2010), Plaintiffs contend that LSV paid $50,000 in principal and that Ecosystem paid back or converted $17,250, so the principal remaining is $32,250; as to the second Debenture (ESYR-MIF004, with a maturity date of December 31, 2011), Plaintiffs contend that LSV paid $50,000 in principal and that Ecosystem paid back or converted $30,000, so the principal remaining is $20,000; as to the third Debenture (ESYR-MIF007A, with a maturity date of December 31, 2010), Plaintiffs contend that LSV paid $32,500 in principal and that Ecosystem paid back or converted $22,433, so

On June 12, 2009, SIV and MIF entered into the Debt Purchase Agreement, pursuant to which SIV agreed to make two purchases from MIF, each in the amount of $125,000, for a $250,000 GreenShift Debenture in respect of each purchase. (Pl. 56.1 St. ¶ 20.)[4] On or about June 17, 2009, SIV wired the first $125,000 payment to MIF and, in return, MIF assigned a $250,000 convertible GreenShift Debenture (Debenture No, 2009-SIV004)[5] to SIV. (Id. ¶¶ 21, 22.) Plaintiffs contend that SIV complied with its obligations under the Debt Purchase Agreement by wiring the second $125,000 purchase payment to MIF on or about July 9, 2009, but that MIF failed to deliver to SIV the corresponding $250,000 GreenShift convertible Debenture. (Id. ¶¶ 23, 24.) Plaintiffs' Seventh Claim for Relief is for the remaining $250,000, plus contractual interest, that MIF allegedly owes SIV pursuant to this Debt Purchase Agreement. (Id. ¶ 24.) Defendants do not deny that SIV paid the additional $125,000.

On April 15, 2010, SIV and MIF entered into an Assignment Agreement pursuant to which, in exchange for SIV's acknowledged payment to MIF of $300,000, MIF agreed to

---

the principal remaining is $10,067; as to the fourth Debenture (No. 2009-SIV 004, with a maturity date of December 31, 2010), Plaintiffs contend that SIV paid $250,000 in principal and that GreenShift paid back or converted $104,095.85, so the principal remaining is $145,904.15; as to the fifth Debenture (GERS-JK 001, with a maturity date of December 31, 2011), Plaintiffs contend that LSV paid $50,000 in principal and that GreenShift paid back or converted $843.36, so the principal remaining is $49,156.64; as to the sixth Debenture (GERS – MIF 009A, with a maturity date of December 31, 2010), Plaintiffs contend that LSV paid $32,500 in principal and that GreenShift paid back or converted $31,000 and so the principal remaining is $1,250 (Pl. 56.1 St. ¶¶ 17-18, see also affidavit of Benjamin Kaplan ("Kaplan Aff.") ¶ 8.) There appears to a mathematical error as to this last claim. The Court assumes that, because the principal remaining is $1,250, GreenShift must have paid back or converted $31,250. Defendants do not contest any of these numbers.

[4] Under the Debt Purchase Agreement, SIV also received the option in its "sole discretion" to purchase up to an additional $500,000 of GreenShift convertible Debentures from MIF (for a total of up to $1,000,000). (Pl. 56.1 St. ¶ 20.)

[5] Plaintiffs contention that this Debenture has an outstanding balance forms the basis of their Fourth Claim for Relief in the Complaint. (Pl. 56.1 St. ¶ 22.)

assign to SIV: (I) a $50,000 portion of debenture ESYR–MIF004 (the subject of Plaintiffs' Second Claim for Relief); (ii) a $50,000 portion of Debenture GERS–JKD 001 (the subject of the Fifth Claim for Relief); and (iii) "up to FIVE (5) additional FIFTY THOUSAND DOLLAR ($50,000) convertible debentures with an aggregate face value of TWO HUNDRED AND FIFTY-SEVEN THOUSAND FIVE HUNDRED DOLLARS ($257,500)" (the "Additional Debentures").  (See Pl. 56.1 St. ¶ 25).  The Agreement also provided that each Additional Debenture must be issued by Ecosystem or Greenshift, and "hav[e] a minimum conversion rate of FIFTY PERCENT (50%)."  (Id.)  SIV's rights under the agreement were subsequently assigned to LSV by written agreement.  (Kaplan Aff. ¶ 11.)  Plaintiffs contend that, despite their proper demand on MIF, MIF has failed to assign any portion of the remaining $257,500 in convertible debentures to LSV.  (Pl. 56.1 St. ¶¶ 26-27.)  Plaintiffs' Eighth Claim for Relief seeks a damages award of $257,500, plus contractual interest.  (Id.)

In opposition to Plaintiffs' motion for summary judgment on the first six Claims for Relief, Defendants assert that, from June 2009 to April 2010, they delivered and Plaintiffs accepted 330,354,139 shares of GreenShift and Adarna stock with a market value of $760,377 in satisfaction of the amounts Plaintiffs now allege are due, and that these shares represented agreed-upon modifications in the terms of the subject instruments and the satisfaction of Defendants' obligations under those instruments.  (Def. 56.1 St. ¶ 5.)  As for Plaintiffs' Seventh Claim for Relief, Defendants contend that MIF's obligation to deliver the first GreenShift Debenture was satisfied by its delivery of the $250,000 GreenShift No. 2009-SIV004 Debenture.  (Id. ¶ 7.)  Then, according to Defendants, the subsequent Assignment Agreement between the same two parties "expressly cancelled" all prior written or oral arguments, so "any right of plaintiffs which might otherwise [have] exist[ed] to demand an additional GreenShift Debenture (or any other

Debenture) [was] wiped out." (Kreisler Aff. ¶¶ 12-13.)[6] In opposition to Plaintiffs' Eighth Claim for Relief, Defendants argue that MIF delivered the first $250,000 GreenShift No. 2009-SIV004 Debenture under the Debt Purchase Agreement, contemporaneously with the $300,000 in cash referenced in the Assignment Agreement, which shows that the $250,000 must be counted toward the $257,500 allegedly owed to LSV under the Assignment Agreement. (Id. ¶ 14.)

      Defendants also argue that, even assuming that MIF is liable under the Debt Purchase Agreement and/or the Assignment Agreement, Plaintiffs should only be awarded damages in the amount of the actual value of the allegedly undelivered Debentures and not money damages calculated by reference to the principal amount of such debentures because "(1) MIF delivered shares to plaintiffs with a value of over $760,000 between June 2009 and April 2010 which plaintiffs accepted and sold between June 2009 and April 2010, and [(2)] neither of these Agreements required MIF to deliver cash to plaintiffs." (See Kreisler Aff. ¶¶ 15-16.) Defendants further assert that determination of the "actual value" of the non-delivered Debentures would require expert testimony. (Id. ¶ 17.)

## DISCUSSION

      Summary judgment is appropriate when there "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is considered material "if it might

---

[6]    Section 4.12 of the Assignment Agreement provides that: "[t]his Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof, and any and all other written or oral agreements relating to the subject matter hereof existing between the parties hereto are expressly cancelled." (Kreisler Aff. ¶ 12.)

affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).  When deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought, only granting the motion for summary judgment if "no reasonable trier of fact could find in favor of the non-moving party."  Lund's Inc. v. Chemical Bank, 870 F.2d 840, 844 (2d Cir. 1989).  "Once the movant has established a prima facie case demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)); see also Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted) (a party cannot survive a motion for summary judgment based on "conclusory allegations or unsubstantiated speculation").  In deciding the motion, the Court may consider only that evidence that would be admissible at trial. Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1994).  See also Fed. R. Civ. P. 56(c)(2), 56(c)(4).

   "It is the primary rule of construction of contracts that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and the parties' reasonable expectations."  Slamow v. Delcol, 571 N.Y.S. 2d 335, 336 (2d Dep't 1991) (citing cases).[7]  "[C]lear, complete writings should generally be enforced according to their terms."

---

[7]  The parties agree that each of the contracts attached to the Complaint is governed by New York state law except for the Assignment Agreement (which the parties agree

W.W.W. Assoc. v. Giacontieri, 77 N.Y.2d 157, 160 (N.Y. 1990). Therefore, "[w]here the language [of a contract] is plain and unambiguous, a court may construe the contract and grant summary judgment." Brass v. American Film Technologies, Inc., 987 F.2d 142, 148 (2d Cir. 1993) (citing Seiden Associates Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (the proper interpretation of an unambiguous contract may properly be reached on summary judgment)); see also Al Sayegh Bros. v. Doral Trading & Export Inc., 219 F. Supp. 2d 285, 291 (E.D.N.Y. 2002) ("the question of whether a writing is ambiguous is a question of law for the Court, while the meaning of an ambiguous contract is a question of fact for the fact finder"). "Because of the simplicity of issues in dispute, suits to enforce promissory notes and guaranties are particularly appropriate for disposition by summary judgment." Fed Deposit Ins. Corp. v. LDM Props., Inc., No. 96 Civ. 945778 (CPS), 1996 WL 449346, at *3 (E.D.N.Y. Jul. 29, 1996) (internal quotation marks and citation omitted).

Breach of Contract Claims

New York law requires a moving party to establish the following elements for a breach of contract claim: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." Roswell Capital Partners LLC v. Alternative Constr. Techs, 08 Civ. 10647 (DLC), 2009 WL 222348, at *8

---

is governed by New Jersey law) and Debenture No. 2009–S1V004, which Defendants contend is governed by Florida law.  However, Plaintiffs contend that the three states' laws are in accord on the issues presented by this motion.  (See Pl. Mem. in Support of Mot. for Summary Judgment at 7.)  Defendants do not dispute that assertion and, in fact, cite only New York law in their opposition to Plaintiffs' motion for summary judgment.  Because both parties rely on New York law in arguing this case, the Court views them as having adopted it for the determination of these issues.  See Photopaint Technologies, LLC v. Smartlens, Corp., 335 F.3d 152, 160, n.8 (2d Cir. 2003).

(S.D.N.Y. Jan. 30, 2009) (citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004)).  The existence of the agreements at issue here is uncontested.  Plaintiffs have proffered uncontroverted evidence that they performed their obligation under each of the eight agreements (the six Debentures and the two later Agreements) by paying money to the Defendants, that Defendants have failed to pay cash upon maturity or convert the outstanding value of the issued Debentures in accordance with their terms, and that MIF failed to assign additional debentures to Plaintiffs in accordance with the terms of the Debt Purchase Agreement and the Assignment Agreement.  Plaintiffs have thus established all of the prima facie elements of their breach of contract claims.

Defendants' Affirmative Defenses

Defendants do not deny that Plaintiffs fulfilled their obligations under the contracts, but they raise two affirmative defenses in opposition to Plaintiffs' motion for summary judgment: (1) that there has been a novation and/or accord and satisfaction in respect of the amounts outstanding on the original six convertible Debenture contracts and (2) that the Assignment Agreement replaced the Debt Purchase Agreement and thus bars any claims brought under the latter.  Under New York law, "a defendant asserting an affirmative defense bears the burden of proof with respect to that defense."  Barton Grp. Inc. v. NCR Corp., 796 F. Supp. 2d 473, 498 (S.D.N.Y. 2011), aff'd, 476 F. App'x 275 (2d Cir. 2012).

Novation and/or Accord and Satisfaction

Defendants proffer an affidavit in which Kevin Kreisler, chairman of Defendants Ecosystem and Greenshift, asserts that, from June 2009 to April 2010, MIF delivered

approximately $787,500 worth of stock in GreenShift, Adarna and a third company – Carbonics Capital Corporation – to Plaintiffs, which Plaintiffs subsequently sold for $2,627,681, and that an inference should be drawn that the stock was delivered with the intent to satisfy the outstanding Debenture liabilities." (See Kreisler Aff. ¶¶ 9-11.)  Notably, Mr. Kreisler does not allege that he was personally involved in the alleged stock issuances, nor does he make any representation as to the companies' actual intent or any action or intent of the Plaintiffs other than the alleged acceptance and sale of the stock.  Defendants even fail to proffer nonconclusory documentation of the alleged stock transactions, relying instead on a table purportedly prepared by Mr. Kreisler based on his examination of unspecified and unproduced records.

Under New York law, in order to establish a novation, "four elements must be present: (1) a previously valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) a valid new contract." In re Balfour MacLaine Intern. Ltd., 85 F.3d 68, 82-83 (2d Cir. 1996) (internal quotation marks and citations omitted).  "An accord and satisfaction is a form of contract whereby one party agrees to give or perform, and the other party agrees to accept, what is offered in settlement of an outstanding claim. . . Because it is an independent contract, an accord and satisfaction requires a meeting of the minds . . . Stated otherwise, the essential elements of an accord and satisfaction are dispute as to the amount due and knowing acceptance by the creditor of a lesser amount." First Sec. Mortg. Co. v. Goldmark Plastics Compounds Inc., 862 F. Supp. 918, 934 (E.D.N.Y. 1994) (internal quotation marks and citation omitted).

Because the table upon which Defendants rely is undated and untitled, does not clearly identify the various alleged stock transactions and was not prepared in the ordinary course of business, Plaintiffs contend that it does not meet the standard necessary to qualify as a business

record for admissibility at trial.  See Fed. R. Evid. 803(6).  Plaintiffs also argue that the chart is not admissible as a summary exhibit under Federal Rule of Evidence 1006, which permits the admission of a summary where the "voluminous writings [or] recordings" themselves would be admissible, because Plaintiffs requested production of all of the underlying documents (see Farber Aff. Ex. B. at pp. 4-6) and none were produced (see id., Ex. C) or offered in Defendants' opposition to this motion.  Both objections are meritorious.

        Furthermore, even if the chart were admissible, it is insufficient to sustain Defendants' burden of proof of a novation.  Defendants cite Al Sayegh Bros., 219 F. Supp. 2d at 291, in support of their contention that the chart and Mr. Kreisler's speculation regarding appropriate inferences are sufficient to demonstrate the existence of an issue of fact for trial as to the existence of a novation.  However, in Al Sayegh Bros., the Court found that the relevant agreement between the parties was "not clear" and "the ambiguity in the language of the [a]greement . . . renders summary judgment inappropriate."  Id.  Moreover, there is no evidence of mutuality presented by the Plaintiffs – i.e. that Plaintiffs accepted a novation or accord.  Regardless of whether one party may have "entertained the hope" that their conduct would satisfy outstanding obligations, "such a desire is turned into legal reality only upon a showing that the parties mutually intended such an accord, and the burden of proof on this issue rests with the defendant."  Colonial Airlines v. Janas, 202 F.2d 914, 918 (2d Cir. 1953) (citation omitted).  Speculative assertions that are not supported by "any admissible evidence, fai[l] to create a question of material fact, and . . . will not defeat summary judgment."  Artistocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 618 F. Supp. 2d 280, 304, n.24 (S.D.N.Y. 2009) (citing Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) ("factual issues created solely by an affidavit crafted to oppose a summary judgment are not 'genuine' issues for trial")).

Accordingly, the Court finds that the Defendants have not raised a genuine issue of material fact as to the existence of a novation relating to the outstanding obligations under the Debentures, and Plaintiffs are therefore entitled as a matter of law to summary judgment on their first six Claims for Relief.

### Whether Claims Under the Debt Purchase Agreement are Barred by the Assignment Agreement

The June 12, 2009, Debt Purchase Agreement required MIF to deliver two $250,000 GreenShift convertible Debentures to Plaintiff SIV.  Plaintiffs have proffered uncontroverted proof that they fulfilled their obligations under the Agreement, but that only the first $250,000 convertible Debenture was delivered to them. (See Kaplan Aff., Ex. G.) Defendants point out that the subsequent Assignment Agreement between the parties provides (in Section 4.12) that it "constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof, and any and all other written or oral agreements relating to the subject matter hereof existing between the parties hereto are expressly cancelled."  (See Kaplan Aff., Ex. H.)  According to Defendants, the Assignment Agreement superseded the Debt Purchase Agreement and no claims can be brought under the Debt Purchase Agreement because "[i]t is well settled that where the parties have clearly expressed or manifested their intention that a subsequent agreement supersede or substitute for an old agreement, the subsequent agreement extinguishes the old one and the remedy for any breach thereof is to sue on the superseding agreement."  Northville Industries Corp. v. Fort Neck Oil Terminals, 474 N.Y.S. 2d 122, 124-25 (2d Dep't 1984), aff'd, 488 N.Y.S. 2d 648 (1985) (internal quotation marks and citation omitted). Defendants further argue that, at the very least, the meaning and intent of Section 4.12 raises an issue of fact which cannot be resolved against Defendants on a motion for summary judgment.

"However, a subsequent contract not pertaining to precisely the same subject matter will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior contract." A&E Television Networks, LLC v. Pivot Point Entertainment, LLC, No. 10 Civ. 9422 (AJN), 2013 WL 1245453, at *10 (S.D.N.Y. Mar. 27, 2013) (internal quotation marks and citation omitted); see also Globe Food Services Corp. v. Consolidated Edison Co. of New York, Inc., 584 N.Y.S. 2d 820, 821 (1st Dep't 1992) (a later contract containing the phrase "this contract shall replace all prior agreements" held not sufficiently definitive to supersede a particular earlier contract without more specific language). "[T]he fact that a subsequent contract contains provisions which are of the same subject matter as those in an earlier agreement is not sufficient to supersede the entire contract; rather, a subsequent agreement supersedes only those terms of the earlier contract that are of the same subject matter." CreditSights Inc. v. Ciasullo, No 05 Civ. 9345 (DAB), 2007 WL 943352, at *8-9 (S.D.N.Y. March 29, 2007).  "To determine if a particular provision is superseded by a provision in a subsequent contract, the Court considers: (1) whether there is an integration and merger clause that explicitly indicates that the prior provision is superseded; (2) whether the two provisions have the same general purpose or address the same general rights; and (3) whether the two provisions can coexist or work in tandem." A&E Television Networks, LLC, 2013 WL 1245453, at *10 (internal quotation marks and citation omitted).

Here, the Debt Purchase Agreement and the Assignment Agreement concern facially independent sets of obligations and each recites different payment amounts with different payment terms for different consideration. (Compare Kaplan Aff., Ex G., Debt Purchase Agreement §§ 1.1, 1.2; Kaplan Aff., Ex. H, § 1.1)  There is no reference in the Assignment Agreement to the Debt Purchase Agreement nor any express indication that the parties intended to

cancel the Debt Purchase Agreement by entering into the Assignment Agreement.  See, e.g., Medtech Products Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 809 (S.D.N.Y. 2008) (contract not superseded where neither the integration clause nor the merger clause of a later contract "explicitly indicates that the prior provision is superseded").  Even the language of Section 4.12 of the Assignment Agreement relating to the cancellation of other existing written or oral agreements between the parties is limited by the provision to "the subject matter hereof," which is not defined and can also be understood as a reference solely to the specific subject matter of the Assignment Agreement.  Defendants do not offer any extrinsic evidence in support of their interpretation of the relationship between the two Agreements.  Mr. Kreisler does not even assert that he had any discussions with Plaintiffs about this issue or that his proffered view of the interrelationship was agreed upon by the parties.  Since neither the integration clause in the Assignment Agreement nor any other evidence supports Defendants' claim that the Debt Purchase Agreement was cancelled, Plaintiffs' motion for summary judgment as to Defendants' liability on the Seventh Claim for Relief is also granted. [8]

Contractual Damages for Seventh and Eighth Claims for Relief

Plaintiffs argue that, because Defendants have defaulted on their payment obligations, they are entitled to money judgments against MIF for the principal amount, plus

---

[8] To the extent that Defendants argue that MIF's delivery of the first $250,000 GreenShift Debenture under the Debt Purchase Agreement contemporaneously with the $300,000 in cash referenced in the Assignment Agreement shows that the $250,000 must be counted toward the $257,500 allegedly owed to LSV under the Assignment Agreement, there is no support for this argument other than one conclusory statement in Mr. Kreisler's Affidavit. (Kreisler Aff. ¶ 14.)  Therefore, the Court also grants Plaintiffs' motion for summary judgment as to liability on the Eighth Claim for Relief.

interest, of each of the undelivered Debentures. MIF's contractual obligation was not, however, to make direct cash payments to Plaintiffs. Rather, MIF contracted to deliver debentures, of unspecified interest terms and maturity dates, of other entities to SIV. Plaintiff has proffered no evidence from which the Court could determine relevant features of the undelivered debentures, nor the monetary value of the unfulfilled obligation. Defendants have proffered (albeit sketchily) evidence that the issuers of the debentures that MIF failed to deliver are in poor financial condition. Material issues of fact thus preclude summary judgment as to damages with respect to the Seventh and Eighth Claims for relief, and the motion is denied to that extent.

Defendants' argument that the alleged separate deliveries of common stock to Plaintiffs (see discussion supra pp. 9-11) should be deemed to have satisfied any outstanding obligation under the Debt Purchase Agreement and the Assignment Agreement is unavailing, for the reasons explained above.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in its entirety as to the First through Sixth Claims for Relief, and as to liability with respect to the Seventh and Eighth Claims for Relief. Summary judgment is granted against Ecosystem in favor of LSV in the amount of $32,250, plus 20% annual contractual interest accruing from January 1, 2008; against Ecosystem in favor of LSV in the amount of $20,000, plus 5% annual contractual interest accruing from May 29, 2009; against GreenShift in favor of LSV in the amount of $10,067, plus 20% annual contractual interest accruing from December 31, 2009; against Ecosystem in favor of SIV in the amount of $145,904.15, plus 12% annual contractual interest accruing from January 1, 2008; against Ecosystem in favor of LSV in the amount of $49,156.64,

plus 5% annual contractual interest accruing from May 29, 2009; and against Ecosystem in favor of LSV in the amount of $1,250, plus 20% annual contractual interest accruing from October 31, 2009.  LSV is granted partial summary judgment of liability against MIF in respect of MIF's failure to deliver debentures of face value of $250,000 and $257,500, respectively, in accordance with the Debt Purchase Agreement and the Assignment Agreement.

        Plaintiff's motion is denied in all other respects.

        This case remains referred to Magistrate Judge Dolinger for general pretrial management.  The parties are directed to contact Judge Dolinger's chambers to arrange a conference to address settlement and any outstanding pretrial issues.

        This Memorandum Opinion and Order resolves docket entry number 20.

    SO ORDERED.

Dated: New York, New York
      September 24, 2014

                                            /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        United States District Judge